Filed 9/3/20  Eram v. TheWeatherMan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FIA ERAM, | |
|     Plaintiff and Respondent, | G057722 |
|       v. | (Super. Ct. No. 30-2018-01001610) |
| THEWEATHERMAN et al., | O P I N I O N |
|     Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Ronald L. Bauer, Judge.  Affirmed in part and reversed in part.

Syverson, Lesowitz & Gebelin and Steven T. Gebelin for Defendants and Appellants.

Kushner Carlson, Paul H. Deese, James D. Decker, and Griffin R. Schindler for Plaintiff and Respondent.

Fia Eram filed a lawsuit against 50 unknown individuals (Doe defendants), who used psuednonymous names to post defamatory comments about her on public forum Web sites such as www.ripoffreport.com (Ripoff Report). Three individuals responded to her complaint by filing a special motion to strike (anti-SLAPP motion). These defendants filed the motion using their online names, "TheWeatherMan," "sem09" and "Elaine" (collectively Defendants unless the context requires otherwise). The court determined sem09 and Elaine did not have standing to bring the motion as Doe defendants. With respect to TheWeatherMan, the court granted the motion and struck four paragraphs, containing publicized statements, from the defamation cause of action. It denied the motion as to five paragraphs after determining Eram had a probability of prevailing on those alleged defamatory statements.

On appeal, sem09 and Elaine assert the court should have ruled on their anti-SLAPP motion. TheWeatherMan contends that while the trial court correctly determined the first prong of the anti-SLAPP statute (cause of action arose from protected activity), it erred in determining the second prong because Eram did not prove she had a probability of prevailing on her defamation claim. TheWeatherMan is partially correct, however, we conclude Eram met her burden of proving she had a probability of prevailing on one of the alleged defamatory statements. Accordingly, the court's order is reversed in part and affirmed in part.

BACKGROUND FACTS

Eram advertised herself and her services as follows: "Fiona, known as Persian Medium, is a divinely gifted celebrity psychic medium, holistic healer, and clinical hypnotherapist." Eram claimed she was born and raised in Iran and moved to Sweden when she turned 18 to "explore" her psychic talent and "connect with her spirituality." She helped the Swedish police solve a missing person case, and she assisted with police investigations in the United Kingdom, Germany, Ireland, Norway, and

2

America.  After studying psychology and hypnotherapy in Sweden, she moved to the United States and started a business "using her gifts" to help others.

Eram was forthcoming about using multiple names.  She was named Firozeh Johansson at birth, her Swedish passport was under the name Fia Johansson, and she legally changed her name to Fia Firozeh Johansson Eram after she was married.  Her trade name was "Persian Medium; I AM POWER," and was a service mark registered with the United States Patent and Trademark Office.

Eram joined the Web site www.keen.com (Keen) as a psychic advisor in 2012 and charged $4 per minute for her psychic medium services.  Over time she raised her prices and maintained her services were in high demand.  "I set my rates as high as I do to control the number of calls I would receive.  If my rates were any lower, I would not be able to manage the volume of calls I would receive."  Beginning in 2016, she noticed several anonymous reviewers posted negative comments about her on the Ripoff Report and other public Web sites.

I. *First Defamation Lawsuit (2017)*

On August 15, 2017, Eram, using the name of Fia Johansson, filed a defamation action against 20 Doe defendants, several Web sites, and five individuals in the Orange County Superior Court (Case No. 30-2017-00937600) (The 2017 lawsuit).  She alleged Susan Hodges posted content as TheWeatherMan, "'AdamC.,'" "'exclientnow,'" "'lanco,'" and "'Master Psychic 777.'"  She believed Herbert J. Duggins was a *nom de plume* for "Hodges," and Angela C. Popp used the name "'Arrianna.'"  She maintained Nyra Capurso was posting comments using the name "'Hawk Spirit.'"  Eram claimed she did not know the true names of Does 3 through 12, and the Doe defendants "include all persons unknown who posted defamatory material about [her on Keen, the Ripoff Report,] PaychicReview.com [(Paychic Review)], ComplaintsBoard.com [(Complaints Board)], Yelp.com [(Yelp)], or any other Web site."  Eram listed in paragraph 42 of her defamation cause of action a "sampling of defamatory

3

remarks" from the following anonymous reviewers: Ianco, exclientnow, AdamC., TheWeatherMan, Arrianne, and Hawk Spirit.

William Canter and "Psychic Master 777" (collectively referred to in the singular as Canter) filed a motion to strike portions of Eram's 2017 complaint. Canter alleged he "never posted any defamatory comments" about Eram and did not know anyone named Fia Johansson. He alleged, "Although the complaint list[ed], at paragraph 42, all of the purportedly defamatory statements, none of them [were] attributed specifically to" Canter. Alternatively, he asserted that even if he had published defamatory statements "those statements [arose] from [his] lawful exercise of [his] constitutional right of free speech, and therefore would be protected" by the anti-SLAPP statute.

In March 2018, the court granted Canter's anti-SLAPP motion. The court did not explain the basis for its ruling. Three months later, the court granted Canter's motion for attorney fees and costs, ruling Eram must pay a total of $38,088.44. Eram appealed this ruling but failed to file an opening brief, resulting in its dismissal.[1] In August 2018, the trial court dismissed the 2017 lawsuit.

II. *Second Defamation Lawsuit (2018)*

Meanwhile, on June 25, 2018, Eram filed the underlying action against 50 Doe defendants. Eram alleged multiple of action including, defamation, intentional/negligent interference with contractual relations and economic advantage, intentional/negligent infliction of emotional distress, and willful and malicious misappropriation. Eram asserted she was unaware of the true names of the Doe defendants but believed the negative reviews originated from either customers or competitors.

---

[1] The court granted anti-SLAPP motions filed by Yelp and the Ripoff Report's owners.

4

In paragraphs 8.1 through 8.17 of the complaint, Eram listed examples of defamatory statements made by "exclientnow," "NonBeliever," "AdamC.," "Kdspirited H.," "Sharon Ramella," and "Elle M." TheWeatherMan's statements accounted for nine of the 17 paragraphs. These nine statements related to two central themes. First, TheWeatherMan announced Eram committed fraud by using different names and addresses. Second, TheWeatherMan asserted Eram should not be trusted due to her poor business practices and failure to timely pay her taxes. A more detailed discussion of the contents of the nine paragraphs will be discussed individually in our analysis section below.

Eram attached to her complaint the online content from three Web sites that contained the 17 statements listed in her complaint as well as other negative reviews. Statements posted on the Ripoff Report, Yelp, and the Complaint Board Web sites were attached in exhibit Nos. A, B, and C, respectively. In her complaint, Eram also alleged she received harassing and abusive e-mails from anonymous people.

Eight months after Eram filed her complaint, Defendants filed an anti-SLAPP motion to prevent Eram from breaching their anonymity through discovery. Defendants explained the gravamen of each claim arose from their psuednonymous posts on public online forums regarding psychic services advertised by "a self-professed public figure."

Defendants asserted the claims made against them were subject to anti-SLAPP and Eram would be unable to establish a probability of prevailing for three reasons: (1) the claims were subject to collateral estoppel because of rulings made in the 2017 lawsuit; (2) there was no viable claim for defamation; and (3) all the other causes of actions required proof of defamatory statements.

Eram filed an opposition as well as a declaration to support her assertion there was a probability of prevailing on the merits. Defendants filed a reply and evidentiary objections to Eram's declaration. On May 6, 2019, the court granted the

5

motion as to paragraphs 8.6, 8.9, 8.10, and 8.12, and denied it as to paragraphs 8.4, 8.5, 8.8, 8.11, and 8.13 of the first cause of action (defamation).

DISCUSSION

I. *Anti-SLAPP Law and the Standard of Review*

"Subdivision (b)(1) of Code of Civil Procedure section 425.16[3] provides that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' Subdivision (e) of section 425.16 elaborates the four types of acts within the ambit of SLAPP. [¶] . . . [¶] 'A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]'" (*Cross v. Facebook, Inc*. (2017) 14 Cal.App.5th 190, 198, fn. omitted (*Cross*).)[2]

"'"The Legislature enacted section 425.16 to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources' [citation], the Legislature sought '"to prevent SLAPPs by ending them early and without great cost to the SLAPP target"' [citation]. Section 425.16 therefore

---

[2]    All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

6

establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." [Citation.] [¶] Finally, and as subdivision (a) of section 425.16 expressly mandates, the section 'shall be construed broadly.' [¶] 'With these principles in mind, we turn to a review of the issues before us, a review that is de novo. [Citation.]'" (*Cross, supra,* 14 Cal.App.5th at pp. 198-199.)

II. *First Prong*

Defendants anti-SLAPP motion was based on section 425.16, subdivision (e)(3). "That subdivision provides that an act in furtherance of the right of free speech as described in section 425.16, subdivision (b)(1), includes 'any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.'" (*Cross, supra,* 14 Cal.App.5th at p. 199.) The Ripoff Report, Yelp, and the Complaint Board are "[W]eb sites accessible to the public [and] . . . are 'public forums' for purposes of the anti-SLAPP statute. [Citation.]" (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4; *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1146 (*Chaker*) ["the Internet as an electronic bulletin board open to literally billions of people all over the world"].)

We also have little difficulty determining the posted statements were of public interest because, as Eram admitted, she was a celebrity, who acknowledged she spent a lot of time in the public eye solving crimes, co-authoring books, making television appearances, and offering her services to the public. Statements about her bad character and poor business practices "plainly fall within in the rubric of consumer information" about her services, i.e., a consumer warning about her trustworthiness. (*Chaker, supra,* 209 Cal.App.4th at p. 1146 [consumer warning]; see also *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1254 [social media postings about boxing champion's relationship with his girlfriend, her pregnancy, its termination and her

7

cosmetic surgery, were "'celebrity gossip' properly considered, under established case law, as statements in connection with an issue of public interest"].)

Like the trial court, we reject Eram's argument TheWeatherMan's statements fell within the commercial speech exception. (§ 425.17, subd. (c)(1).) The exception provides the anti-SLAPP statute would not apply to any cause of action brought against Eram's business competitors (other psychic mediums) arising from statements by those competitors "if both of the following conditions exist: [¶] (1) The statement . . . consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales . . . the person's goods or services . . . . [¶] (2) The intended audience is an actual buyer or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual buyer or customer . . . ." (§ 425.17, subd. (c)(1).)

Eram did not meet her burden of proving applicability of the commercial speech exemption (*Simpson Strong-Tie Co. v. Gore* (2010) 49 Cal.4th 12, 26 [plaintiff's burden]), because she only suspects TheWeatherMan was a business competitor. More importantly, it cannot be said any of the anonymous statements at issue could be construed as advertising or promoting TheWeatherMan's business operations because no such services were identified. The alleged defamatory statements simply served as a warning with respect to Eram's services without promoting any competitors. "It therefore falls squarely outside section 425.17 [subdivision] (c)'s exemption for commercial speech." (*Id.* at p. 30.)

Because the record shows the statements that give rise to Eram's defamation claim were made in a public forum with respect to a matter of public interest within the meaning of section 425.16, subdivision (e)(3), Eram bore the burden of showing a probability of prevailing on her defamation claim. (§ 425.16, subd. (b)(1).)

8

III.  *Second Prong*

"The filing of a notice of motion under the anti-SLAPP statute generally will stay all discovery in the action.  (§ 425.16, subd. (g).)  Nonetheless, a plaintiff opposing an anti-SLAPP motion cannot rely on allegations in the complaint but must set forth evidence that would be admissible at trial.  [Citation.]  Precisely because the statute (1) permits early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech concerns, and (2) limits opportunity to conduct discovery, the plaintiff's burden of establishing a probability of prevailing is not high:  We do not weigh credibility, nor do we evaluate the weight of the evidence.  Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law.  [Citation.]  Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP.  [Citation.]" (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.)

"Defamation requires a publication that is false, defamatory, unprivileged, and has a tendency to injure or cause special damage.  (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277; Civ. Code, §§ 44, 45.)  Defamation claims have a one-year statute of limitations.  (§ 340, subd. (c).)  "Ordinarily, a tort cause of action accrues and the limitations period commences when the injury occurs; for defamation this occurs, generally speaking, when the defendant communicates the defamatory statement to others." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1237.)

Eram's June 25, 2018, complaint lists 17 allegedly defamatory statements, only nine of which are relevant to this appeal because they were posted by TheWeatherMan.  Our analysis is focused on those nine statements.

A.  *Statute of Limitations*

Defamatory statements published before June 25, 2017, are barred by the statute of limitations because Eram filed her complaint on June 25, 2018.  (§ 340, subd. (c).)  This rule applies to statements contained in paragraphs 8.4 (posted August

9

2016), 8.5 (posted September 2016), and 8.6 (posted September 2016).[3] Defamation claims barred by the statute of limitations are not viable and are subject to anti-SLAPP relief.  (*Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 405.)

Eram maintains TheWeatherMan should be equitably estopped from asserting the statute of limitation defense for statements published in 2016.  She argues the defense should not apply when, due to intentional concealment, a plaintiff is unable to discover a defendant's true identity.  (Citing *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932-937 (*Bernson*).)  Eram appears to have forgotten that in 2017 she filed a lawsuit concerning defamatory statements posted in 2016/2017 on Yelp, the Ripoff Report and the Complaint Board.  Her complaint included posting made by TheWeatherMan and named 20 Doe defendants.  As aptly stated by Defendants, Eram could have timely pursued her claims regarding 2016 statements with her 2017 Doe complaint.  Moreover, Eram misconstrues the holding of the *Bernson* case.  It clearly concluded, "While ignorance of the existence of an injury or cause of action may delay the running of the statute of limitations until the date of discovery, the general rule in California has been that ignorance of the identity of the defendant is not essential to a claim and therefore will not toll the statute.  [Citations.]"  (*Id.* at p. 932.)  As explained in the *Bernson* case, a timely Doe action enlarges the statute of limitations period for three years, giving a plaintiff additional time to identify and serve the defendant.  (*Ibid.*)

---

[3]     The three paragraphs were posted on the Ripoff Report Web site. Paragraph 8.4 contained the following alleged defamatory statement, "'[Persia] isn't a country.  You are claiming you are Persian.  It's Iran [where] the main terrorist[s] and ISIS are from . . . . Fiona keeps changing her listing naming because the IRS is looking for her and she owes taxes.'"  Paragraph 8.6's essentially repeated the allegation Eram was a terrorist.  Paragraph 8.5 contained the warning "'Her real name is Patricia Males Evanko a known scam artist according to police.  BE AWARE OF HER CONS!'"

10

B. *Collateral Estoppel*

TheWeatherMan asserts Eram cannot prevail on any of her claims because they are barred by the doctrine of collateral estoppel. Little needs to be said about this argument because our record provides no information about what issues were "necessarily decided" in the 2017 lawsuit. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [elements of collateral estoppel].) Collateral estoppel precludes the relitigation of an issue only if (1) the issue is identical to an issue decided in a prior proceeding; (2) the issue was actually litigated; (3) *the issue was necessarily decided*; (4) the decision in the prior proceeding is final and on the merits; and (5) the party against whom collateral estoppel is asserted was a party to the prior proceeding or in privity with a party to the prior proceeding. (*Ibid*., italics added.) The trial court's ruling on Canter's anti-SLAPP motion in the 2017 lawsuit related to a few but not all of TheWeatherMan's statements listed in the 2018 lawsuit. More importantly, the court did not explain the basis for its decision. One of Canter's arguments related to the lack of evidence he was TheWeatherMan or posted the alleged defamatory statements. The court may have agreed on one of these points and granted the motion without considering whether Eram had any probability of prevailing on her claims. Similarly, the record does not explain the legal grounds for the trial court's dismissal of the entire action. Our record merely contains a copy of the trial court docket showing when the dismissal took place.

C. *Probability of Prevailing*

The remaining six posts allegedly made by TheWeatherMan and listed in the complaint were published after June 25, 2017. The court granted the anti-SLAPP motion as to three and denied the motion as to the rest. Although our review is de novo, we need not review the court's decision to strike paragraphs 8.9, 8.10, and 8.12 because neither party asserts this decision was incorrect. Absent any argument on Eram's probability of prevailing on paragraphs 8.9, 8.10, and 8.12, the parties have forfeited any

11

issue regarding these claims.[4]  (*Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 107 [by failing to address merits party forfeited argument court erred in striking cross-complaint under anti-SLAPP statute].)

We therefore turn our attention to the remaining three paragraphs 8.8, 8.11, and 8.13.  We conclude the trial court should have granted the motion to strike paragraphs 8.11 and 8.13 on two independent grounds:  falsity and actual malice.  To briefly summarize, Eram failed to establish a probability of showing TheWeatherMan's statements were false.  "'"In all cases of alleged defamation, . . . the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose."'  [Citation.]"  (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 28.)  Moreover, Eram does not dispute that as a public figure she had the additional burden of proving TheWeatherMan posted false statements with actual malice.  (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 81 [defendant acts with actual malice "when publishing a knowingly false statement or where he 'entertained serious doubts as to [its] truth"] (*Christian*).)  Eram failed to establish TheWeatherMan knew the statements recited in paragraphs 8.11 and 8.13 were completely fabricated and unverifiable.

---

[4]  These paragraphs also represent TheWeatherMan's postings on the Ripoff Report Web site.  Paragraphs 8.9 and 8.10 asserted Eram was scamming her customers and Keen had an obligation to stop her criminal behavior.  Paragraph 8.10 also contained the following alleged defamatory statement "'This is a legal issue for the one making the false claims . . . .  Check her trademark, check her LLC, check her business that she must be using as a front for being in the country.  She is claiming that she is Persian yet Persia hasn't existed since 1935.  Can you say the word fraud?  It's Iran, an enemy to the free world and a State sponsor of terrorism.  So she is Iranian.  Iraq used to be Mesopotamia, but [no] one refers to that anymore.  So what's the difference?  The difference is deception.'"  The statement in paragraph 8.12 continued on this theme.  "'Why is she using all these different names and pretending to be Swedish when she is Iranian – a country that is our enemy.  Is she looking out for your best interests or is she looking out for Iran's best interests?'"

12

For both reasons, we conclude Eram failed to establish a probability of prevailing on her defamation claim with respect to paragraphs 8.11 and 8.13. The same cannot be said with respect to paragraph 8.8, and we affirm the court's order denying the motion to strike this alleged defamatory statement. For our analysis of these issues, we address each publication separately.

A. *Paragraph 8.13 TheWeatherMan on The Ripoff Report, August 2017*

Eram asserted the following statement was defamatory: "'[S]he was unable to pay her Wyoming taxes on time for years.'" (Paragraph 8.13) To meet her burden of proving this statement was false, Eram declared under penalty of perjury, "I conduct my business through my company, PMsvc, LLC, which is a Wyoming limited liability company in good standing ('PMsvc'). I am clearly listed as the organizer of PMsvc on the Wyoming Secretary of State's [Web site]. PMsvc is current on its taxes. To the best of my knowledge, the IRS is not looking for me as a result of any back taxes owed by PMsvc or for any other reason as I have paid my taxes in full each year. I have never changed my name or address to hide from the IRS or any other governmental agency. In fact, I have paid a significant amount in taxes each year. While I have been audited in the past, none of the tax audits ever resulted in me owing new or additional taxes."

Eram asserted her declaration provided sufficient evidence TheWeatherMan's damaging statement about tax evasion was false. She noted the trial court similarly concluded her denial of "tax trouble" in Wyoming was enough to defeat the anti-SLAPP motion. She directed our attention to the trial court's conclusion Eram "at this point" could prove malice simply by showing the statements were false and people were "attacking her." The trial court stated, "And when she says, I never paid taxes late, I've never been found delinquent, that, in that large context of tax claims, shows that she can make a claim for defamation."

We reach a different conclusion after comparing evidence presented by TheWeatherMan to support the anti-SLAPP motion with Eram's declaration. As

13

explained in greater detail below, TheWeatherMan presented evidence Eram's company had *not timely paid* state taxes owed in Wyoming. Eram's evidence she is not guilty of state or federal tax evasion misses the mark. To prove the statement was false, Eram needed evidence contradicting the allegation her company failed to pay state taxes in a timely manner for several years.

In support of the anti-SLAPP motion, TheWeatherMan submitted a copy of PMsvc's business records published by Wyoming's Secretary of State's Web site. The document plainly shows the Secretary of State issued PMsvc notifications of delinquent taxes in 2015, 2016, 2017, and 2018 (the Web site shows the entries as "Delinquency Notice—Tax"). In addition, the Web site reported that for a brief period of time in July 2015, following a tax delinquency notice, PMsvc's status was revoked but eventually reinstated (the Web site shows the entry "Dissolution/Revocation—Tax" followed by a "Reinstatement—Tax"). However, the 2019 Wyoming Secretary of State's Web page also reflected PMsvc was currently in "[g]ood" standing regarding tax payments.

Eram did not dispute the accuracy of the Wyoming Secretary of State Web site printout showing PMsvc's tax payment history. Her assertion PMsvc was "current on its taxes" was accurate but did not disprove TheWeatherMan's statement regarding PMsvc's history of receiving delinquency notices for failing to pay taxes on time. Likewise, Eram's statement that the federal IRS was not looking for "back taxes" did not negate TheWeatherMan's assertion PMsvc was late in paying state or business taxes owed to the State of Wyoming. Because Eram did not have a probability of proving the statement in paragraph 8.13 was false, we reverse the trial court's ruling denying the anti-SLAPP motion as to paragraph 8.13.

B. *Paragraph 8.11 TheWeatherMan on The Ripoff Report, August 2017*

In her complaint, Eram alleged the following sentence was defamatory: "'Persian ([Iran]) Medium I Am Power, Fiona on keen.com, Fia Johansson and Rick and Fia Eram . . . why does your LLC [list] as PMsvc LLC have you listed as 'Fia Eram' and

14

the company out of 'Wyoming' and taxes NOT paid on time?  Why is your address listed in a dump in Santa Monica? . . .'"  (Paragraph 8.11)

We have already concluded Eram failed to establish TheWeatherMan's statements relating to the untimely payment of state taxes were false.  However, we recognize the statement in paragraph 8.11 raised an additional allegation of misconduct.  By listing four aliases and questioning why Eram registered her LLC in a different state from her business address, TheWeatherMan suggested Eram's business was a sham and she could not be trusted (as further evidenced by the poor business practice of not paying taxes on time).

To establish the falsity of this allegation, Eram repeatedly asserted she was involved in a legitimate business.  As mentioned above, she declared "I have never changed my name or address to hide from the IRS or any other governmental agency."  In her declaration, Eram asserted the following:  "I am not a fraud.  I am not a scam artist.  I am not a con artist.  I am not a phony.  These are all baseless allegations.  My work as a psychic medium is based on a sincerely held belief in my ability to communicate and interpret such messages.  My abilities are a gift, and I feel I have a responsibility to share that gift with those who seek help and ask questions.  I am open and honest with my clients about the nature and extent of my services and how much those services cost."

She further stated:  "I do not prey on vulnerable individuals or induce anyone to use my services.  I have more than enough clients and reject many clients for a variety of reasons.  I set my rates as high as I do to control the number of calls I would receive.  If my rates were any lower, I would not be able to manage the volume of calls I would receive.  Put simply, my services are not for everyone, and I speak about that on my [Web site]."

Eram did not deny she utilized several different names to conduct her psychic business, and she verified why the specified names were legitimate.  There was her birth name (Firozeh Johansson), her Swedish passport name (Fia Johansson), her

15

married name used on U.S. citizenship documents (Fia Firozeh Johansson Eram), and her "commonly known" nickname (Fia Eram). Eram explained her trade name was "Persian Medium; I AM POWER," which was owned by her company PMsvc. She explained, "It is common practice in the psychic advisor industry for advisors to use trade names. Like with most industries, a trade name increases name recognition. This practice also protects my privacy and anonymity, as well as my family's privacy." In other words, Eram admitted having several legal names but the allegation she used aliases to hide her identity and conduct business in a deceptive manner was untrue.

While the above showing of evidence was sufficient to prove most of the statement on Paragraph 8.11 was false, there remained several flaws in Eram's story. Eram's declaration describing her many "legitimate" names did not include the alias Fiona. TheWeatherMan submitted evidence Eram used the name "Fiona" in her Keen advertisements. Eram failed to provide an innocent explanation for using yet another alias in addition to her trade name, nick names, and legal names. TheWeatherMan also provided proof Eram used a nickname, Fia Eram, rather than any of her legal names, on her LLC's articles of organization filed in Wyoming. Eram did not offer any explanation for this legally questionable decision. Finally, TheWeatherMan established as true that Eram registered her business in Wyoming but listed her principal office and mailing address as being in Santa Monica, California. Eram did not provide any legitimate business purpose for this decision and, more importantly, failed to assert the California address in Santa Monica was a genuine business establishment and not a city "dump." It would be reasonable for a trier of fact to infer a Wyoming business using a fake out-of-state address should not be trusted.

In summary, we conclude TheWeatherMan's assertion Eram was conducting business using multiple aliases in two locations was true, as was her late payment of taxes. Although Eram asserts any negative inferences arising from these facts was untrue, her probability of prevailing was significantly diminished by failure to fully

16

explain why she was not using legitimate names on legal documents relating to her business or her advertisements. These unanswered discrepancies, in addition to the unresolved question of the location of her business operations, strongly suggests TheWeatherMan raised a valid question in paragraph 8.11.

Moreover, because most of the alleged defamatory statement appears to be based on verifiable facts, it is highly improbable Eram will be able to prove the allegation was made with actual malice. In other words, TheWeatherMan identified specific evidence that, if credited by the trier of fact, would establish TheWeatherMan believed the truthfulness of the posted allegation. Actual malice "requires a showing that the allegedly false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.' [Citation.] The reckless disregard standard requires a 'high degree of awareness of . . . probable falsity. . . .' [Citation.]" (*Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1167.) We conclude Eram did not make a sufficient prima facie showing of facts to sustain her burden of demonstrating a high probability TheWeatherMan published the defamatory statements knowing of their falsity or while entertaining serious doubts as to their truth. (*Id.* at p. 1169.)

In her appellate briefing, Eram acknowledged this element of her defamation claim was difficult to establish. She maintained that at this early stage of the lawsuit it should be enough to show how people were attacking her and trying to destroy her business. She asked, "How can [she] be expected to prove the subjective intent of TheWeatherMan when she doesn't even know who TheWeatherMan is?"

We agree that generally plaintiffs have a very low burden of proof to defeat an anti-SLAPP motion. However, Eram did not need to know the publisher's identity to refute evidence presented by TheWeatherMan asserting the statements in paragraph 8.11 were not fabricated. The WeatherMan claimed the statements were based on information gathered from legitimate sources such as her business filings, advertisements, and publications. TheWeatherMan submitted evidence establishing his concerns about

17

Eram's business practices were not completely unfounded. Eram did not demonstrate a probability of prevailing on the necessary element of actual malice. Accordingly, we reverse the court's ruling denying the anti-SLAPP motion as to paragraph 8.11.

C. *Paragraph 8.8 TheWeatherMan on The Ripoff Report, July 2017*

In her complaint, Eram alleged the following sentence was defamatory: "'Persian Medium I Am Power, aka Fiona claims her real name isn't PATRICIA MALES EVANKO. She uses many different names to pull [off] her fraud but police in Riverside have confirmed her name so you can call Riverside police . . . This woman is a total scam and should be removed from keen.com and arrested . . . I am glad the media is looking in to these scammers.'"

Essentially, TheWeatherMan posted a public warning to consumers that Eram was using a false identity, as well as multiple names, to commit fraud and she was a suspicious person know by a police department. In addition, the statement asserted Eram was a "total scam," a term commonly understood as referring to a deceitful person who defrauds others or makes money through a dishonest scheme. The entire publication certainly created the inference that the Riverside police investigated Eram's false identity and would confirm she was a con artist/criminal.

We begin our analysis by noting the first sentence of the post was true. As mentioned, Eram admitted she used multiple names, and she also claimed she never used the name Patricia Males Evanko. Specifically, Eram declared Patricia Males Evanko was employed by the attorney (Christopher J. Day), who helped her prepare and file her trade name application to register her service mark. She stated, "Patricia Males Evanko was an employee from [] Day's office, which is located in Arizona, not Riverside. The public registration information provided by the United States Patent and Trademark Office clearly indicates that . . . Evanko is an employee of . . . Day and not the owner of the service mark and has no connection to Riverside." Thus, contrary to the negative inference raised in TheWeatherMan's statement, Eram established she never attempted to

18

assume the false identity of Evanko. Eram also established this allegation was made with the requisite malice. TheWeatherMan claimed he was relying on Wyoming Secretary of State's records and this document clearly showed Evanko was representing Eram. Nothing on the Web page suggested Eram was misusing Evanko's name on her business documents filed in Wyoming. From this record, we can reasonably infer the TheWeatherMan fabricated the story Eram was the same person as Evanko, or alternatively was misusing Evanko's name to hide her true identity while defrauding customers.

Eram successfully presented sufficient evidence showing the second sentence of paragraph 8.8 was false and made with actual malice. As for the assertion the Riverside police knew about Eram's multiple aliases and fraudulent activities, Eram stated in her declaration this was untrue. She asserted the following: "To the best of my knowledge, I am not under investigation by the Riverside Police Department or any other governmental agency. I have never been contacted by any governmental agency regarding any investigations into me or my business. The only incident in which I was contacted by any governmental agency was when an investigator with the California Bureau of Security and Investigative Services ("BSIS") reached out to me based on false reports from people like TheWeatherMan indicating that I was advertising myself as a licensed private investigator."

As mentioned, Eram also steadfastly denied scamming her clients. She declared the following: "I do not prey on vulnerable individuals or induce anyone to use my services. I have more than enough clients and reject many clients for a variety of reasons. I set my rates as high as I do to control the number of calls I would receive. If my rates were any lower, I would not be able to manage the volume of calls I would receive. Put simply, my services are not for everyone, and I speak about that on my [Web site]." Evidence of Eram's written disclosures and the subjective nature of her interpretation services further supported her defamation claim. As noted earlier, at this

19

stage of the proceedings we do not weigh credibility and must accept as true all favorable evidence. Contrary to TheWeatherMan's assertion on appeal, she was not required to provide proof she was "an actual psychic" to defeat the motion. Eram provided sufficient evidence for purposes of defeating an anti-SLAPP motion with respect to paragraph 8.8.

TheWeatherMan did not present direct evidence to support the statement that the Riverside Police Department was aware of either Eram's many names or that it had investigated fraudulent activity. We reject the notion that the BSIS's investigation adequately confirmed Eram's misconduct. First, the alleged defamatory statement did not mention the BSIS. Second, the statement specifically mentioned only one government agency, the Riverside Police Department, as being able to confirm wrongdoing. An investigation by the police inferred criminal misconduct, actions far more concerning than a licensing dispute. Third, TheWeatherMan was apparently unaware of the BSIS investigation when originally posting the defamatory statement. This information was not included in the anti-SLAPP motion's supporting documentation, and TheWeatherMan failed to assert it was one of the grounds for making the statement. Eram mentioned the investigation in her offer of proof showing there was no basis for TheWeatherMan's assertion she should be arrested for criminal misconduct.

The assertion of fraudulent conduct and police involvement appears to be a fabricated story, based on nothing other than TheWeatherMan's imagination. "A defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice. [Citation.] 'A failure to investigate [fn. omitted] [citation], anger and hostility toward the plaintiff [citation], reliance upon sources known to be unreliable [citations], or known to be biased against the plaintiff [citations]—such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication.' [Citation.] Thus, malice may be inferred where, for example, 'a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.' [Citation.] Similarly, an inference of

20

malice may be drawn 'when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation[,] . . . [or] where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports. [Fn. omitted.]' [Citation.] Conversely, '[t]he failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy. [Citations.] Similarly, mere proof of ill will on the part of the publisher may likewise be insufficient. [Citation.]' [Citation.]" (*Christian, supra,* 148 Cal.App.4th at pp. 84-85.)

TheWeatherMan's hostility towards Eram was plainly evident from the harsh tone and large quantity of postings under this pseudonym. Although such harsh and derogatory language would not be enough to establish actual malice, Eram presented sufficient circumstantial evidence to meet her minimal burden of proof required for anti-SLAPP motions. Simply stated, Eram presented evidence showing TheWeatherMan's hostility towards her resulted in a reckless and fabricated story designed to cause tremendous harm.

TheWeatherMan asserted the alleged defamatory statement in paragraph 8.8 can be described as permissible opinions or hyperbole. (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385 (*Franklin*).) We appreciate the rule that "satirical, hyperbolic, imaginative, or figurative statements are protected because 'the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact.' [Citation.]" (*Ibid.*) It is well-settled the dispositive question "is not strictly whether the published statement is fact or opinion" rather could reasonable fact finder conclude "the published statement declares or implies a provably false assertion of fact. [Citations.]" (*Ibid.*) TheWeatherMan's statement the police were aware of Eram's misconduct declared a provably false assertion of fact. The statement inferred the police were aware of her fraudulent activity. One need only contact the Riverside Police Department to verify the truth of the warning. The statement was not

21

susceptible to an innocent meaning. Similarly, the inference Eram used multiple names to deceive her customers and the authorities was a provable false assertion of fact.

TheWeatherMan argued the posted statement "appeared in a raucous and free-flowing online discussion in which [Eram] herself hurled insults, epithets, and derogatory names at anonymous online posters – like 'sociopath and mental[,]' 'failure professionally and personally, being bankrupt emotionally,' 'a Dorf [*sic*] on titanic,' 'a moron,' 'you are not literate enough to write,' 'if you had half a brain,' . . . 'You are the embodiment of leeches,' 'you and your old lady's hillbilly club,' 'old hags whose skeletons are dried still by the phone hoping for a call for a hint of attention,' . . . 'fossil full of BS like you' . . . ." Indeed, this long list of insults provides excellent examples of protected hyperbole; Eram's exaggerated and heated reaction to her critics. However, calling someone a sociopath after a negative encounter "would [not] be interpreted by the average Internet reader as anything more than insulting name calling[.]" (*Chaker, supra*, 209 Cal.App.4th at p. 1149; see *Franklin, supra*, 116 Cal.App.4th at p. 389 [statements plaintiff "'stole'" and "'plagiarized'" data "appear in context as rhetorical hyperbole"]; *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 278-279 [calling plaintiff "thief" and "liar" during political campaign was hyperbole].)

The same cannot be said for TheWeatherMan's specific and public warning a police department could verify Eram was using a false identity and engaged in fraudulent activity. Likewise, specific allegations of criminal activity in Riverside due to the use of a false identity were not "subjective expressions of disapproval, devoid of any factual content." (*Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1404.) TheWeatherMan's posts, viewed in the context of Web sites devoted to exposing "rip offs" were not mere hyperbolic statements, but rather declared and implied provable false

22

assertions of fact. (See *Franklin, supra*, 116 Cal.App.4th at p. 385.)[5] As Eram's asserted, "TheWeatherMan's comments were meanspirited, and [he or she] knew that the publication of the false statements on Ripoff Report would cast me in a false light. TheWeatherMan's intent was to use a public service review site to damage my reputation and business. As a result of the comments, my business has suffered significant harm in the form of lost business and income."

## IV. *Derivative Causes of Action*

Based on the minute order, it does not appear that the trial court considered striking any causes of action other than the defamation claim. The Defendants' anti-SLAPP motion acknowledged the other causes of action were dependent on first establishing the published statements were defamatory. On appeal, they repeat this assertion, maintaining that if this court strikes the entire defamation claim the other causes of actions also "fall." In light of our ruling that Eram's defamation claim survives the anti-SLAPP motion, this argument was rendered moot.

Alternatively, Defendants assert the trial court erred by failing to strike Eram's derivative claims due to other defects. We agree all eight causes of action were listed in Defendants' anti-SLAPP motion, placing the burden on Eram to establish a probability of prevailing on each one. After conducting a de novo review, we conclude she satisfied this burden.

In their appellate briefing, Defendants focus on defects they found with two derivative causes of actions. They maintain Eram did not show a probability of prevailing on her second cause of action for interference with contract and prospective economic advantage. They explain the claim was based on the theory defamatory

---

[5] This ruling also answers TheWeatherMan's assertion the statements are protected by Civil Code section 47, subdivision (c)'s qualified common interest privilege. This privilege only applies to statements made to someone having an immediate and direct interest without malice.

statements interfered with Eram's contract with Keen, yet she asserted her business was conducted through a separate legal entity (PMsvc). They misconstrue the record. Eram declared she entered a contract with Keen in 2012. Defendants submitted documents filed in Wyoming showing PMsvc was formed the following year in 2013. We conclude Eram's declaration about her contractual relationship with Keen was sufficient evidence at this stage of the proceedings.

Defendants also assert Eram did not provide specific evidence of economic harm caused by the alleged defamatory statements. Once again, we conclude Eram's declaration on this issue was sufficient. For example, she declared the following: "[M]y business has suffered significant harm in the form of lost business and income. For instance, I am currently charging at least $3 less per minute on Avid Advice than I did for Keen. Further, I have suffered severe reputational damage in the psychic community and with existing and potential customers. I have also suffered shame, mortification, security concerns, and emotional distress as a result of the false statements made by TheWeatherMan." This minimal showing was adequate for purposes of defeating an anti-SLAPP motion.

Finally, Defendants attack Eram's emotional distress claims (fifth and sixth causes of action) on the grounds the statements were not based on extreme conduct but rather rude behavior. As mentioned earlier, Eram established a probability of prevailing on her claim TheWeatherMan knowingly published a false statement *with actual malice*. At this stage of the proceedings, Eram's declaration explaining how TheWeatherMan fabricated stories of criminal misconduct, recklessly spread allegations of fraudulent behavior, and publicly shaming Eram, were sufficient to defeat an anti-SLAPP motion.

V. *Standing of Sem09 and Elaine*

The trial court determined individuals using the psuednonymous names sem09 and Elaine could not bring an anti-SLAPP motion as Doe defendants. We agree. These interlopers were not mentioned anywhere in Eram's complaint. For this reason,

24

they had no basis to ask the trial court to strike portions of the complaint that did not concern them. They do cite to case authority holding third parties can file an anti-SLAPP motion (and seek attorney fees) on the theory they might be sued in the future.

Sem09 and Elaine assert they made negative statements about Eram on the Ripoff Report, and their statements were included in an exhibit Eram attached to her complaint. They speculate Eram will amend the complaint and add them as Doe defendants. We conclude that until Eram attempts to amend her complaint, sem09 and Elaine are not parties to the lawsuit and they certainly were not aggrieved by the court's refusal to strike allegations that have nothing to do with them.

Finally, we note that to receive the benefit of section 474, a plaintiff must state a cause of action against each Doe defendant and amend the complaint when the name is discovered. (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1143.) Eram was clearly aware of all the defamatory statements included in the exhibits, yet she did not include in her complaint statements posted by sem09 or Elaine, despite being ignorant about their true identifies. Because Eram failed to state a cause of action against sem09 or Elaine as Doe defendants, there was no basis for these third parties to insert themselves into the action and strike portions of Eram's complaint.

25

DISPOSITION

We affirm the order in part and reverse the order in part. In the interests of justice, neither party shall recover costs on appeal.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

FYBEL, J.